IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JODY SMITH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**EXPOSURE IS EVERYTHING LLC** d/b/a Fluent<br><br>*Defendant.* | Case No. 1:25-cv-425<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jody Smith ("Plaintiff" or "Mr. Smith") brings this Class Action Complaint and Demand for Jury Trial against Defendant Exposure is Everything LLC ("Defendant" or "Fluent") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Fluent violated the TCPA by sending telemarketing text messages and calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

## PARTIES

4. Plaintiff Jody Smith is an individual.

5. Defendant Exposure is Everything LLC, which does business under the name Fluent, is a corporation incorporated in Florida which does business in this District, including by calling phone numbers in this District and impersonating another company, former Defendant Fluent, Inc., which also does business in this District.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7.      This Court has general personal jurisdiction over Fluent because the company directed its tortious conduct into this District, including by calling telephone numbers in this district and impersonating another company with its headquarters in this District.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the lawsuit, namely, the illegal telemarketing complained of and impersonation of another company, all took place in this District.

## BACKGROUND

9.      The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11.      A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12.      The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the messages at issue.

15. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

16. Plaintiff's telephone number, (214) XXX-XXXX, is a residential, non-commercial telephone number.

17. Mr. Smith uses the number for personal, residential, and household reasons.

18. Mr. Smith does not use the number for business reasons or business use.

19. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

20. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there in 2008, well before the calls at issue.

21. Plaintiff has never been a customer of Fluent.

22. Despite this, the Plaintiff received at least forty text messages from Fluent between approximately August of 2024 continuing through present.

23. The text messages were all sent to advertise Fluent's goods and services.

24. The text messages came from the Caller IDs 813-370-1594 and 813-820-6984

25. For example, on August 13, 2024, the Plaintiff received the following text messages:

```
Good morning INSURE ROCKET LLC!

Hope you're having a blessed day! I'm reaching out to see if you'd
be open to doubling, no, 10X-ing your sales and productivity? I wanted to
```

4

personally introduce our cutting edge Fluent CRM – a game changer designed exclusively for insurance agencies like yours.

Why The Fluent CRM? 🤔

AI-Powered Efficiency: Say goodbye to tedious tasks! Our AI-driven sales platform automates your entire business process, from nurturing your lead, to client acquisition to policy management.

All-in-One Solution: Fluent CRM integrates seamlessly with your existing tools, making it your go-to for marketing, sales, lead management, and service excellence.

Don't let your competition get ahead! Embrace the power of A.I and The Fluent CRM and watch your business flourish. Contact us for a FREE discovery call!

End

26.    Despite not responding to these text messages or otherwise expressing interest in Fluent's products and services, the Plaintiff received the following text message on August 16:

Hey INSURE ROCKET LLC! What is your schedule like to talk about the Fluent CRM & A.I.? Lets talk about how we can 10x your business using our technology!

5

27. The messages continued through December of this year, even expressing confusion that proves that Fluent does not know who they are texting and sending unsolicited text messages to, such as this message on December 6:

```
This is INSURE ROCKET LLC, right?
```

28. This was followed by the following messages the following day:

```
Hey INSURE ROCKET LLC,
Sorry I haven't been able to reach you on your request, the weekdays get very busy.
Just had couple spots open up for today. Are you free to talk now?
```

29. Shockingly, the Plaintiff did not respond, and the Plaintiff received the following identical message on December 12:

```
This is INSURE ROCKET LLC, right?
```

30. The messages continued into the new year, now ereferencing another individual named "Chris," such as the following message on January 13, 2025:

```
Hey Chris! Can you handle another 20 qualified appointments over the next month? If not, no worries, completely understand if you're back up with your current leads
```

31. The calls continued throughout the pendency of this litigation, including some as early as 5:31 AM local time in the recipient Plaintiff's local time zone, such as the following messages sent on January 20:

```
Hey!!
STOP
Chris G
Can you handle another 50 quality leads this month? Totally understand
    if your pipeline's already full and you can't!
```

6

32. The following message was sent on January 21 at 5:32 AM local time:

> `Did you see my text about the leads?`

33. The messages from Defendant continue.

34. These text messages and calls all attempted to get the Plaintiff to purchase the Defendant's lead generation, advertising, marketing, and CRM services.

35. The text messages were unwanted.

36. The text messages were nonconsensual encounters.

37. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text messages.

38. Plaintiff never provided his consent or requested the text messages.

39. Plaintiff and the Classes have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls disturbed them at early hours of the day, occupied their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

40. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

41. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging the purchase of Fluent's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time to their residential telephone number, (2) within any 12-month period (3) promoting Fluent's goods or services, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

42. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

43. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

44. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

    a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. Whether Defendant has established and implemented, with due care,

8

reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

      c.      Whether Defendant made any calls while violating the call time restrictions of the TCPA;

      d.      Whether Defendant should be held liable for violations committed on its behalf, if any; and

      e.      Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

46.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

47.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

      a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

      b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive

of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

   c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

   d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
**(On Behalf of Plaintiff and the National DNC Class and Early/Late Calls Class)**

48. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

49. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

50. It is also a separate violation to place calls before 8:00 AM or after 9:00 PM, as the Defendant did for some of the text messages received by Plaintiff and as Defendant did with the members of the Early/Late Calls Class.

51. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period,

despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

52. These violations were willful or knowing.

53. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule and time of day restrictions, Plaintiff and members of the Classes are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

54. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Early/Late Calls Class as alleged herein;

C. Appointment of Plaintiff as representative of the Classes;

D. Appointment of the undersigned as counsel for the Classes;

E. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

F. Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

G. Attorneys' fees and costs, as permitted by law; and

H. Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 11th day of February, 2025.

>  */s/ Andrew Roman Perrong*
>  Andrew Roman Perrong, Esq.
>  PA Bar #333687 (*Pro Hac Vice*)
>  Perrong Law LLC
>  2657 Mount Carmel Avenue
>  Glenside, Pennsylvania 19038
>  Phone: 215-225-5529 (CALL-LAW)
>  Facsimile: 888-329-0305
>  a@perronglaw.com